**1622-CC11444**

Electronically Filed - City of St. Louis - December 01, 2016 - 05:29 PM

**IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
STATE OF MISSOURI**

HOLLIS JENNINGS, as Personal
Representative of the Estate of Howard
Johnson, Deceased,

THOMAS WICK,

DENNIS PATTERSON,

GUSSIE ROBINSON,

SANDRA PALMQUIST

MICHAEL HARPER,

CATHERINE KOVACH,

RALPH MCGHEE,

DONNA THOMAS,

MITCHELL WILLIAMS,

PHYLLIS TOLAND,

BRENDAN BOATENG,

SHERRIE CALLOWAY,

JUDE QUINLAN,

YOLANDA DIXON

GLENN BLANTON,

KURT DAVIS,

LINDA KAVEH,

JOSEPH SANCHEZ,

ROGER MORRIS,

**PETITION AND JURY DEMAND**

Case No. _____

1

Electronically Filed - City of St. Louis - December 01, 2016 - 05:29 PM

JAMES S. TURNER,

CHARLES BEAUDOIN,

KIRK TURNER,

VIRGINIA FALLUCCA,

IDA BIRMINGHAM,

FRED BONNETT,

ROBIN BOURNE,

MARY T. BRANCH,

GERALD CAMPBELL,

PATRICK CAROSONE,

LOUIS CECCE,

JEROME CHAMBERS,

LINDA R. COLEMAN,

JOHNNY A. DAVIS,

VALERIE DORSEY,

MAXINE DOWE,

LEONARD ENDICOTT, JR.,

SHARON FEGAN,

WILLIE FLEMING,

JOHN HARP,

MICHAEL HILL,

BENJAMIN HOLT,

VENICE JELKS,

Electronically Filed - City of St. Louis - December 01, 2016 - 05:29 PM

ROBERT JOSEPHS,

MARK LAW,

TRACY LEIGH,

JOSEPH MAESTAS,

WILLIAM MCELVEEN,

MARKELIA MCGRUDER,

ROBERT MEARS,

ANNETTE MIDDLETON

and

HOWARD RAY MOORE,

        Plaintiffs,

v.

3M COMPANY,

and

ARIZANT HEALTHCARE, INC.,

        Defendants.

## PETITION

COMES NOW Plaintiffs, by and through their undersigned counsel, and for their cause of action against Defendants 3M COMPANY and ARIZANT HEALTHCARE, INC. (hereinafter collectively referred to as "Defendants") arising from Defendants' design, research, formulation, development, manufacture, sale, testing, marketing, advertising, promotion and/or distribution of the unsafe and defective device sold under the trade name of Bair Hugger Forced Air Warming device (hereinafter "Bair Hugger") states as follows:

3

Electronically Filed - City of St. Louis - December 01, 2016 - 05:29 PM

## PARTIES

1.    Plaintiff Hollis Jennings, as Personal Representative of the Estate of Howard Johnson, deceased is a citizen and resident of St. Louis, Missouri.

2.    Plaintiff Howard Johnson underwent a right femoral neck fracture surgery in which the Bair Hugger was used on May 11, 2015 at Barnes Jewish Hospital in St. Louis, Missouri.  Plaintiff Johnson subsequently experienced infections, including a post-operative bacterial infection in the right hip.

3.    Plaintiff Thomas Wick is a citizen and resident of St. Louis, Missouri.

4.    Plaintiff Thomas Wick underwent surgeries on his hip in which the Bair Hugger was used on April 26, 2015, and April 28, 2015 at Barnes Jewish Hospital in St. Louis, Missouri. Plaintiff Wick subsequently experienced infections, including a post-operative infection in his hip.

5.    Plaintiff Dennis Patterson is a citizen and resident of St. Louis, Missouri.

6.    Plaintiff Dennis Patterson underwent a left knee replacement surgery in which the Bair Hugger was used on October 6, 2011 at St. Anthony's Medical Center in St. Louis, Missouri.  Plaintiff Patterson subsequently experienced infections, including a post-operative infection in the left knee.

7.    Plaintiff Gussie Robinson is a citizen and resident of St. Louis, Missouri.

8.    Plaintiff Gussie Robinson underwent total right knee arthroplasty in which the Bair Hugger was used on March 26, 2012 at Barnes Jewish Hospital in St. Louis, Missouri. Plaintiff Robinson subsequently experienced infections, including a post-operative infection in the right knee.

9.    Plaintiff Sandra Palmquist is a citizen and resident of Chisholm, Minnesota.

4

Electronically Filed - City of St. Louis - December 01, 2016 - 05:29 PM

10.     Plaintiff Sandra Palmquist underwent a right total knee arthroplasty surgery in which the Bair Hugger was used on June 28, 2011 at Virginia Regional Medical Center in Virginia, Minnesota.  Plaintiff Palmquist subsequently experienced infections, including two post-operative staph infections in the right knee.

11.     Plaintiff Michael Harper is a citizen and resident of Cadet, Missouri.

12.     Plaintiff Michael Harper underwent a surgery for removal of loose polyethylene debris and exchange of failed plastic component on his right knee in which the Bair Hugger was used on April 10, 2012 at St. Anthony's Hospital in St. Louis, Missouri.  Plaintiff Harper subsequently experienced infections, including a post-operative infection in the right knee.

13.     Plaintiff Catherine Kovach is a citizen and resident of Warrenton, Missouri.

14.     Plaintiff Catherine Kovach underwent a total left hip replacement in which the Bair Hugger was used on December 7, 2011 at Barnes Jewish Hospital in St. Louis, Missouri. Plaintiff Kovach subsequently experienced infections, including a post-operative infection the left hip.

15.     Plaintiff Ralph McGhee is a citizen and resident of Florissant, Missouri.

16.     Plaintiff Ralph McGhee underwent a total left knee arthroplasty in which the Bair Hugger was used on October 24, 2012 at Barnes Jewish Hospital in St. Louis, Missouri.  Plaintiff McGhee subsequently experienced infections, including a post-operative infection in the left knee.

17.     Plaintiff Donna Thomas is a citizen and resident of O'Fallon, Missouri.

18.     Plaintiff Donna Thomas underwent a total left hip arthroplasty in which the Bair Hugger was used on July 16, 2007 at Barnes Jewish Hospital in St. Louis, Missouri.  Plaintiff Thomas subsequently experienced infections, including a post-operative infection the left hip.

Electronically Filed - City of St. Louis - December 01, 2016 - 05:29 PM

19.     Plaintiff Mitchell Williams is a citizen and resident of Union, Missouri.

20.     Plaintiff Mitchell Williams underwent left patellectomy surgery on the left knee in which the Bair Hugger was used on May 10, 2012 at Barnes Jewish Hospital in St. Louis, Missouri. Plaintiff Mitchell Williams subsequently experienced infections, including a post-operative infection in the left knee.

21.     Plaintiff Phyllis Toland is a citizen and resident of Waverly, Ohio.

22.     Plaintiff Phyllis Toland underwent a patellofemoral ligament reconstruction on her right knee in which the Bair Hugger was used on January 21, 2015 at Adena Medical Center in Chillicothe, Ohio. Plaintiff Toland subsequently experienced infections, including a post-operative MRSA infection in the right knee.

23.     Plaintiff Brenda Boateng is a citizen and resident of Washington, D.C.

24.     Plaintiff Brenda Boateng underwent an evacuation of a hematoma of the right knee in which the Bair Hugger was used on May 25, 2010 at Howard University Hospital in Washington, D.C. Plaintiff Boateng subsequently experienced infections, including methicillin-resistant Staphylococcus aureus in the right knee.

25.     Plaintiff Sherrie Calloway is a citizen and resident of Thomasville, Georgia.

26.     Plaintiff Sherrie Calloway underwent total left knee replacement in which the Bair Hugger was used on March 24, 2011 at St. Joseph – Candler Hospital in Savannah, Georgia. Plaintiff Calloway subsequently experienced infections, including a staph infection in the left knee.

27.     Plaintiff Jude Quinlan is a citizen and resident of Fall River, Massachusetts.

6

Electronically Filed - City of St. Louis - December 01, 2016 - 05:29 PM

28.    Plaintiff Jude Quinlan underwent total right knee replacement in which the Bair Hugger was used on May 5, 2011 at Boston Medical Center in Boston, Massachusetts. Plaintiff Quinlan subsequently experienced infections, including an infection in the right knee.

29.    Plaintiff Yolanda Dixon is a citizen and resident of Waterford, Michigan.

30.    Plaintiff Yolanda Dixon underwent right lateral uni-compartment knee arthroplasty in which the Bair Hugger was used on April 21, 2014 at Orthopedic Surgical Institute in Rochester Hills, Michigan. Plaintiff Dixon subsequently experienced infections, including an infection in the right knee.

31.    Plaintiff Glenn Blanton is a citizen and resident of Lathrup, Michigan.

32.    Plaintiff Glenn Blanton underwent total right knee arthroplasty in which the Bair Hugger was used on January 15, 2014 at Oakwood Annapolis Hospital in Wayne, Michigan. Plaintiff Blanton subsequently experienced infections, including an infection in the right knee.

33.    Plaintiff Kurt Davis is a citizen and resident of Caliente, Nevada.

34.    Plaintiff Kurt Davis underwent total right knee arthroplasty in which the Bair Hugger was used on August 23, 2011 at Dixie Regional Medical Center in St. George, Utah. Plaintiff Davis subsequently experienced infections, including an infection in the right knee.

35.    Plaintiff Linda Kaveh is a citizen and resident of Las Vegas, Nevada.

36.    Plaintiff Linda Kaveh underwent a left knee replacement in which the Bair Hugger was used on June 8, 2015 at Orange Coast Memorial Medical Center in Fountain Valley, California. Plaintiff Kaveh subsequently experienced infections, including a staph infection in the left knee.

37.    Plaintiff Joseph Sanchez is a citizen and resident of Staten Island, New York.

Electronically Filed - City of St. Louis - December 01, 2016 - 05:29 PM

38.     Plaintiff Joseph Sanchez underwent total left hip replacement in which the Bair Hugger was used on April 29, 2011 at Richmond University Medical Center in Staten Island, New York.  Plaintiff Sanchez subsequently experienced infections, including an infection in the left hip.

39.     Plaintiff Roger Morris is a citizen and resident of Secane, Pennsylvania.

40.     Plaintiff Roger Morris underwent total left knee replacement in which the Bair Hugger was used on June 5, 2007 at Presbyterian Medical Center in Philadelphia, Pennsylvania. Plaintiff Morris subsequently experienced infections, including an infection in the left knee.

41.     Plaintiff James S. Turner is a citizen and resident of Powhatan, Virginia.

42.     Plaintiff James S. Turner underwent left knee replacement surgery in which the Bair Hugger was used on February 17, 2015 at Johnston-Willis Hospital in Richmond, Virginia. Plaintiff Turner subsequently experienced infections, including an infection in the left knee.

43.     Plaintiff Charles Beaudoin is a citizen and resident of Myrtle Beach, South Carolina.

44.     Plaintiff Charles Beaudoin underwent total left knee arthroplasty surgery in which the Bair Hugger was used on July 19, 2006 at Grand Strand Regional Medical Center in Myrtle Beach, South Carolina.  Plaintiff Beaudoin subsequently experienced infections, including an infection in the left knee.

45.     Plaintiff Kirk Turner is a citizen and resident of Woodville, Alabama.

46.     Plaintiff Kirk Turner underwent left total knee arthroplasty surgery in which the Bair Hugger was used on October 27, 2010 at Central Peninsula Hospital in Soldotna, Alaska. Plaintiff Turner subsequently experienced infections, including an infection in the left knee.

47.     Plaintiff Virginia Fallucca is a citizen and resident of Mesa, Arizona.

Electronically Filed - City of St. Louis - December 01, 2016 - 05:29 PM

48.    Plaintiff Virginia Fallucca underwent right total knee arthroplasty surgery in which the Bair Hugger was used on August 5, 2010 at JFK Medical Center in Edison, New Jersey.  Plaintiff Fallucca subsequently experienced infections, including an infection in the right knee.

49.    Plaintiff Ida Birmingham is a citizen and resident of Kansas City, Kansas.

50.    Plaintiff Ida Birmingham underwent a right total knee arthroplasty surgery in which the Bair Hugger was used on July 23, 2009 at Providence Medical Center in Kansas City, Kansas.  Plaintiff Fallucca subsequently experienced infections, including an infection in the right knee.

51.    Plaintiff Fred Bonnett is a citizen and resident of St. Louis, Missouri.

52.    Plaintiff Fred Bonnett underwent an open reduction internal fixation of the left proximal (upper) femur and fracture of the neck of the femur in which the Bair Hugger was used on May 18, 2006 at St. Louis University Hospital in St. Louis, Missouri.  Plaintiff Bonnett experienced infections, including an infection in the left hip.

53.    Plaintiff Robin Bourne is a citizen and resident of Eaton, Ohio.

54.    Plaintiff Robin Bourne underwent a left total hip arthroplasty in which the Bair Hugger was used on June 18, 2015 at Miami Valley Hospital in Dayton, Ohio.  Plaintiff Bourne experienced infections, including an infection in the left hip.

55.    Plaintiff Mary T. Branch is a citizen and resident of Chadbourne, North Carolina.

56.    Plaintiff Mary T. Branch underwent a revision left total knee arthroplasty in which the Bair Hugger was used on October 6, 2015 at Duke University Hospital in Durham, North Carolina.  Plaintiff Branch experienced infections, including an infection in the left knee.

57.    Plaintiff Gerald Campbell is a citizen and resident of Mount Morris, Michigan.

Electronically Filed - City of St. Louis - December 01, 2016 - 05:29 PM

58.     Plaintiff Gerald Campbell underwent a right total hip arthroplasty in which the Bair Hugger was used on June 6, 2011 at McLaren Regional Medical Center in Flint, Michigan. Plaintiff Campbell experienced infections, including an infection in the right hip.

59.     Plaintiff Patrick Carosone is a citizen and resident of Camden, New York.

60.     Plaintiff Patrick Carosone underwent a right total knee arthroplasty in which the Bair Hugger was used on December 7, 2004 at New York Westchester Square Medical Center in Bronx, New York.  Plaintiff Carosone experienced infections, including an infection in the right knee.

61.     Plaintiff Louis Cecce is a citizen and resident of South Waverly, Pennsylvania.

62.     Plaintiff Louis Cecce underwent a left total knee arthroplasty in which Bair Hugger was used on May 18, 2010 at Guthrie Robert Packer Hospital in Sayre, Pennsylvania. Plaintiff Cecce experienced infections, including an infection in the left knee.

63.     Plaintiff Jerome Chambers is a citizen and resident of Detroit, Michigan.

64.     Plaintiff Jerome Chambers underwent a right total knee arthroplasty in which Bair Hugger was used on November 15, 2010 at Henry Ford Health System in Detroit, Michigan. Plaintiff Chambers experienced infections, including an infection in the right knee.

65.     Plaintiff Linda R. Coleman is a citizen and resident of Bath, Pennsylvania.

66.     Plaintiff Linda R. Coleman underwent a right total knee replacement in which Bair Hugger was used on July 28, 2007 at Sutter Solano Medical Center in Vallejo, California. Plaintiff Coleman experienced infections, including an infection in the right knee.

67.     Plaintiff Johnny A. Davis is a citizen and resident of Laurel, Mississippi.

Electronically Filed - City of St. Louis - December 01, 2016 - 05:29 PM

68.     Plaintiff Johnny A. Davis underwent a left total knee arthroplasty in which Bair Hugger was used on April 5, 2010 at South Central Regional Medical Center in Laurel, Mississippi.  Plaintiff Davis experienced infections, including an infection in the left knee.

69.     Plaintiff Valerie Dorsey is a citizen and resident of Providence, Rhode Island.

70.     Plaintiff Valerie Dorsey underwent a left knee total arthroplasty in which Bair Hugger was used on November 9, 2011 at The Miriam Hospital in Providence, Rhode Island. Plaintiff Dorsey experienced infections, including an infection in the left knee.

71.     Plaintiff Maxine Dowe is a citizen and resident of Carneys Point, New Jersey.

72.     Plaintiff Maxine Dowe underwent a left total knee replacement in which Bair Hugger was used on March 20, 2008 at Christiana Care Health Services in Wilmington, Delaware.  Plaintiff Dowe experienced infections, including an infection in the left knee.

73.     Plaintiff Leonard Endicott, Jr. is a citizen and resident of Fenton, Missouri.

74.     Plaintiff Leonard Endicott, Jr. underwent a removal of Fred Thompson prosthesis with removal of some heterotopic bone formation and revision of left total hip replacement in which Bair Hugger was used on February 21, 2005 at St. Anthony Medical Center in St. Louis, Missouri.  Plaintiff Endicott experienced infections, including an infection in the left hip.

75.     Plaintiff Sharon Fegan is a citizen and resident of Sault Sainte Marie, Michigan.

76.     Plaintiff Sharon Fegan underwent a right total knee arthroplasty in which Bair Hugger was used on June 1, 2010 at Chippewa County War Memorial Hospital in Sault Sainte Marie, Michigan.  Plaintiff Fegan experienced infections, including an infection in the right knee.

77.     Plaintiff Willie Fleming is a citizen and resident of Swansea, Illinois.

Electronically Filed - City of St. Louis - December 01, 2016 - 05:29 PM

78.     Plaintiff Willie Fleming underwent an open reduction & internal fixation of the right femur, application of the external fixator to the right tibial plateau, compartmental monitoring, compartmental fasciotomy in which Bair Hugger was used on March 16, 2010 at St. Louis University Hospital in St. Louis, Missouri.  Plaintiff Fleming experienced infections, including an infection in the right hip.

79.     Plaintiff John Harp is a citizen and resident of Shawnee, Kansas.

80.     Plaintiff John Harp underwent a total left knee arthroplasty in which Bair Hugger was used on November 29, 2003 at University of Kansas Hospital in Kansas City, Kansas. Plaintiff Harp experienced infections, including an infection in the left knee.

81.     Plaintiff Michael Hill is a citizen and resident of Washington, D.C.

82.     Plaintiff Michael Hill underwent a left total knee arthroplasty in which Bair Hugger was used on June 5, 2012 at Virginia Commonwealth University Health System in Richmond, Virginia.  Plaintiff Hill experienced infections, including an infection in the left knee.

83.     Plaintiff Benjamin Holt is a citizen and resident of Leesburg, Georgia.

84.     Plaintiff Benjamin Holt underwent bilateral total knee arthroplasty in which Bair Hugger was used on August 5, 2003 at Phoebe Putney Memorial Hospital in Albany, Georgia. Plaintiff Holt experienced infections, including an infection in the left knee.

85.     Plaintiff Venice Jelks is a citizen and resident of Fairview Heights, Illinois.

86.     Plaintiff Venice Jelks underwent the removal of a failed left distal femoral arthroplasty in which Bair Hugger was used on September 9, 2014 at Barnes Jewish Hospital in St. Louis, Missouri.  Plaintiff Jelks experienced infections, including an infection in the left femur and knee.

87.     Plaintiff Robert Josephs is a citizen and resident of Winnetka, California.

Electronically Filed - City of St. Louis - December 01, 2016 - 05:29 PM

88.    Plaintiff Robert Josephs underwent acetabular reconstruction, placement of acetabular component for right hip arthroplasty and resection of proximal femur in which Bair Hugger was used on January 11, 2012 at Northridge Hospital Medical Center in Northridge, California.  Plaintiff Josephs experienced infections, including an infection in the right hip.

89.    Plaintiff Mark Law is a citizen and resident of Sullivan, Missouri.

90.    Plaintiff Mark Law underwent right total hip arthroplasty in which Bair Hugger was used on September 20, 2006 at St. Louis University Hospital in St. Louis, Missouri. Plaintiff Law experienced infections, including an infection in the right hip.

91.    Plaintiff Tracy Leigh is a citizen and resident of Montgomery, Texas.

92.    Plaintiff Tracy Leigh underwent left total hip arthroplasty in which Bair Hugger was used on September 9, 2015 at The University of Texas Medical Branch Hospital in Galveston, Texas.  Plaintiff Leigh experienced infections, including an infection in the left hip.

93.    Plaintiff Joseph Maestas is a citizen and resident of Beverly Hills, Florida.

94.    Plaintiff Joseph Maestas underwent a complex primary left total knee arthroplasty in which Bair Hugger was used on March 27, 2003 at Baylor University Medical Center in Dallas, Texas.  Plaintiff Maestas experienced infections, including an infection in the left knee.

95.    Plaintiff William McElveen is a citizen and resident of Philadelphia, Pennsylvania.

96.    Plaintiff William McElveen underwent Stage II revision right total knee arthroplasty in which Bair Hugger was used on May 5, 2014 at Temple University Health System in Philadelphia, Pennsylvania.  Plaintiff McElveen experienced infections, including an infection in the right knee.

97.    Plaintiff Markelia McGruder is a citizen and resident of St. Louis, Missouri.

Electronically Filed - City of St. Louis - December 01, 2016 - 05:29 PM

98.    Plaintiff Markelia McGruder underwent a right total hip arthroplasty in which Bair Hugger was used on November 8, 2004 at Barnes Jewish Hospital in St. Louis, Missouri. Plaintiff McGruder experienced infections, including an infection in the right hip.

99.    Plaintiff Robert Mears is a citizen and resident of Bakersfield, California.

100.    Plaintiff Robert Mears underwent a left total knee arthroplasty in which Bair Hugger was used on June 3, 2014 at San Joaquin Community Hospital in Bakersfield, California. Plaintiff Mears experienced infections, including an infection in the left hip.

101.    Plaintiff Annette Middleton is a citizen and resident of Louisville, Georgia.

102.    Plaintiff Annette Middleton underwent a left total knee arthroplasty in which Bair Hugger was used on September 2, 2008 at Doctor's Hospital of Augusta in Augusta, Georgia. Plaintiff Middleton experienced infections, including an infection in the left knee.

103.    Plaintiff Howard Ray Moore is a citizen and resident of Elon, North Carolina.

104.    Plaintiff Howard Ray Moore underwent a revision of right total knee arthroplasty in which Bair Hugger was used on April 4, 2007 at Alamance Regional Medical Center in Burlington, North Carolina. Plaintiff Moore experienced infections, including an infection in the right knee.

105.    Defendant 3M COMPANY is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located in Maplewood, Minnesota.

106.    Upon information and belief, Defendant ARIZANT is a corporation organized and existing under the laws of the State of Delaware. Arizant conducts business throughout the United States. Arizant was purchased by Defendant 3M in 2010, and is a wholly owned subsidiary of Defendant 3M.

Electronically Filed - City of St. Louis - December 01, 2016 - 05:29 PM

107.    At all times alleged herein, Defendants include any and all parents, subsidiaries, affiliates, divisions, franchises, partners, joint ventures, and organization units of any kind, their predecessors, successors and assigns and their officers, directors, employees, agents, representatives and any and all other persons acting on their behalf.

**VENUE**

108.    All Plaintiffs herein are properly joined pursuant to Rule 52.05(a) of the Missouri Rules of Civil Procedure, as their claims all arise out of the same series of transactions or occurrences.

109.    The claims in this case present common questions of fact and law concerning, among other things, the design, manufacture, distribution sale and operation of the Bair Hugger, the increased risk of infection from use of Bair Hugger, what information Defendants possessed concerning the harmful effects of Bair Hugger, what information Defendants disclosed to patients and physicians about those harmful effects, and what information Defendants were required to disclose about those harmful effects.

110.    Plaintiffs' claims are all logically related in that all Plaintiffs' claim that Bair Hugger was defectively designed, manufactured, and marketed by Defendants, that the Bair Hugger caused the injuries complained of herein, and that Defendants failed to provide adequate warnings regarding the dangers posed by Bair Hugger use.

111.    Plaintiffs all suffered similar injuries in the form of infections as result of the same wrongful conduct and tortious acts by the Defendants, including, but not limited to, Defendants' design, manufacture and sale of the Bair Hugger, Defendants' negligence in the design and manufacture of Bair Hugger, Defendants' failure to conduct adequate safety and efficacy studies, the Defendants' distribution of inadequate and misleading marketing materials

Electronically Filed - City of St. Louis - December 01, 2016 - 05:29 PM

and literature to physicians and patients, and the lack of adequate warnings provided to physicians and patients.

112. Defendants are subject to personal jurisdiction in Missouri. Defendants are authorized to conduct business in Missouri, conduct substantial and continuing business in Missouri, derive substantial economic profits from Missouri, and committed tortious acts in Missouri.

113. Defendants are subject to general jurisdiction in Missouri. At all pertinent times, Defendants have conducted and continue to conduct continuous and systematic business in the State of Missouri, have purposefully injected Bair Hugger into the stream of commerce to be sold in Missouri, including to Hospitals in St. Louis, Missouri, and have taken actions such that they should anticipate being sued in the State of Missouri.

114. Defendants are subject to specific jurisdiction. Defendants have transacted business in the State of Missouri that has given rise to this cause of action, and have committed torts giving rise to this action in the State of Missouri. This includes the design, marketing and selling of Bair Hugger in the State of Missouri, including in St. Louis, which gave to this cause of action as a whole.

115. Additionally, Defendant 3M is subject to specific jurisdiction because Defendant 3M manufactures products within plants located in three separate Missouri cities, including Columbia, Nevada, and Springfield.

116. Defendant 3M also is subject to specific jurisdiction because Defendant 3M is a registered corporation to do business in the State of Missouri through the Missouri Secretary of State, and has been registered to do so since August 23, 1929. This included an appointed

Electronically Filed - City of St. Louis - December 01, 2016 - 05:29 PM

registered agent at CT Corporation System located at 120 South Central Avenue, Clayton, MO 63105.

117.    Defendant Arizant also is subject to specific jurisdiction because Defendant Arizant was a registered corporation to do business in the State of Missouri through the Missouri Secretary of State beginning on February 13, 2003 until April 14, 2015.

118.    Defendants shipped, delivered, or caused to be shipped or delivered the Bair Hugger to consumers in the State of Missouri, and benefited financially from the shipping or delivering of the Bair Hugger to consumers in the State of Missouri

119.    Any removal to federal court is improper because there is a lack of complete diversity under 28 U.S.C. § 1332 as Plaintiff Sandra Palmquist and Defendant 3M Company both reside in Minnesota.

120.    Any removal to federal court is improper because the case does not present a federal question under 28 U.S.C. § 1331.

121.    Venue is proper in this Court pursuant to Mo. Rev. Stat. 508.010 because Plaintiffs Howard Johnson, Thomas Wick, Gussie Robinson, Catherine Kovach, Ralph McGhee, Donna Thomas, Mitchell Williams, Fred Bonnett, Willie Fleming, Venice Jelks, Mark Law and Markelia McGruder were first injured by the wrongful acts or negligent conduct of the Defendants alleged in this action in the City of St. Louis, Missouri.

122.    Venue is proper with respect to any non-Missouri Plaintiff in this Court as Defendants are subject to pendent personal jurisdiction because the claim arises out of a common nucleus of operative facts in the same suit over which the court has personal jurisdiction. Defendants' wrongful conduct and tortious acts were done without any regard for individual Plaintiff differences.   Defendants' conduct in designing, manufacturing, developing, marketing,

Electronically Filed - City of St. Louis - December 01, 2016 - 05:29 PM

and distributing Bair Hugger relates to all Plaintiffs' claims herein and arises out of a common nucleus of operative facts underlying the Plaintiffs' claims.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

123.    At all relevant times, Defendants engaged in the business of researching its products, including the Bair Hugger.

124.    At all relevant times, Defendants engaged in the business of designing its products, including the Bair Hugger.

125.    At all relevant times, Defendants engaged in the business of inspecting its products, including the Bair Hugger.

126.    At all relevant times, Defendants engaged in the business of labeling its products, including the Bair Hugger.

127.    At all relevant times, Defendants engaged in the business of manufacturing its products, including the Bair Hugger.

128.    At all relevant times, Defendants engaged in the business of packaging its products, including the Bair Hugger.

129.    At all relevant times, Defendants engaged in the business of marketing its products, including the Bair Hugger.

130.    At all relevant times, Defendants engaged in the business of distributing its products, including the Bair Hugger.

131.    At all relevant times, Defendants engaged in the business of producing its products, including the Bair Hugger.

132.    At all relevant times, Defendants engaged in the business of promoting its products, including the Bair Hugger.

18

Electronically Filed - City of St. Louis - December 01, 2016 - 05:29 PM

133.    At all relevant times, Defendants engaged in the business of selling its products, including the Bair Hugger.

134.    More than 50,000 Bair Hugger units are currently in use across the country.

135.    The Bair Hugger consists of a portable heater/blower connected by a flexible hose to a disposable blanket that is positioned over (or in some cases under) surgical patients.  The system intends to warm patients during surgery by blowing heated air on a patient's exposed skin.

136.    The heated air produced by Bair Hugger accumulates under the surgical drape covering the patient and escapes from under the surgical drape below the level of the surgical table or at the head end of the surgical table.  This escaped air creates air flow currents that flow against the downward air flow of the operating room.  As this warmed air rises, it can deposit bacteria, including bacteria from the floor of the surgical room, to the vicinity of the surgical site and into the surgery site.

137.    Upon information and belief, the Defendant Arizant reduced the intake filtration efficiency of "older" filter models, such as model 200708C in the Bair Hugger 505, in comparison to the newer filter model 200708D within Bair Hugger blowers, such as the Bair Hugger 750.  This action reduced the safety of such devices.

138.    As a result of these actions by Defendants, the internal airflow paths of Bair Hugger devices can become contaminated with pathogens.

139.    The contaminating pathogens can incubate and proliferate within the internal airflow paths of Bair Hugger devices.

Electronically Filed - City of St. Louis - December 01, 2016 - 05:29 PM

140.    These pathogens are then expelled from the interior of the Bair Hugger device by the outward airflow, travel through the hose into the disposable blanket and escape into the operating room.

141.    These pathogens increase the risk of infection and can cause and/or contribute to cause infection of the open surgical sites of patients.

142.    Upon information and belief, the Defendants have been aware of the problems with the Bair Hugger devices alleged herein, since at least 2009.

143.    The Defendants have actively and aggressively marketed the Bair Hugger as safe in both general and orthopedic surgeries despite their knowledge to the contrary.

144.    In June of 1997, in a letter to the Food and Drug Administration ("FDA"), the Defendant Arizant, Inc., admitted that "air blown intraoperatively across the surgical wound may result in airborne contamination." The Defendant addressed this flaw in their products by making further misrepresentations to the FDA when they stated the risk of contamination by air flow is obviated because all "Bair Hugger Blankets designed for use in the operating room feature a tape barrier which prevent [sic] air from migrating toward the surgical site." That statement by the Defendant was and is misleading and/or false. A number of Bair Hugger blankets marked as safe for use in surgeries do not utilize a taped edge at all. Instead, those blankets blow contaminated air directly toward the surgical field. Also, the statement that the taped barrier would contain the contaminated air is false because it ignores the fact that the heated air from the Bair Hugger rises against the general downward airflow of the operating theatre. The presence of a tape edge does nothing to prevent the Bair Hugger from facilitating the movement of pathogens from elsewhere, including from the floor of the operating room, to

Electronically Filed - City of St. Louis - December 01, 2016 - 05:29 PM

the surgical site. When the Defendant made these representations, it had actual knowledge of their falsity.

145.    In a communication to the FDA in September 2000, Defendant represented that the filtration system on the Bair Hugger Model 750 meets HEPA ("High Efficiency Particulate Air") Standards.

146.    Upon information and belief Defendant's September 2000 statement was false at the time Defendant made it and remains false today. To meet HEPA standards, an air filter must be capable of removing 99.97% of all particles 0.3 microns or larger. The filter of the Bair Hugger 750, which is marketed as HEPA compliant, is capable of removing a maximum of 65% of all such particles.

147.    On Defendant's website, www.fawfacts.com/laminar_airflow/ (last visited August 29, 2016), the Defendant makes the following misrepresentations:

a.    Contamination mobilized by the convection currents generated by the Bair Hugger cannot reach the surgical site because "[a]ir velocity within the operating room is many times stronger than that of a forced-air warming blanket";

b.    "The air emerging from the blanket is directed downward by the surgical drape and emerges under the operating room table and is drawn away through the laminar system's return air inlets";

c.    "It's been suggested that warm air rising above the Bair Hugger blanket could interfere with the downward laminar flow toward the surgical site. It should be noted that the Bair Hugger warming unit delivers less than one percent of the airflow of a laminar flow system and the momentum of the downward air is far greater than the upward momentum imparted to the air above the blanket."

148.    Upon information and belief, these statements on Defendant's website, itemized in the preceding paragraph, are false and intentionally misleading. Through these statements, the Defendant disguises the fact that the issue is not merely the strength of the airflow in a laminar (constant, non-turbulent flow) system but also the increased temperature of the air generated by

Electronically Filed - City of St. Louis - December 01, 2016 - 05:29 PM

the Bair Hugger. The cold air circulated with the operating room, having a higher density than the air heated by the Bair Hugger, falls to the floor which forces the contaminated air at the floor of the operating room, now warmed by the waste heat from the Bair Hugger, to rise into the sterile field and the surgical site. The heated air rises, and is not "drawn away" as the Defendant falsely claim in their advertisement.

149.    In advertisements that appeared in multiple medical publications as early as 2010, the Defendant made the following false and deliberately misleading claims:

"While simple logic makes it clear that forced air warming has no impact on laminar conditions, science also supports this. A forced air warming blanket delivers less than one percent of the airflow of a laminar flow system and therefore is unable to affect laminar flow ventilation systems."

As published scientific research has demonstrated, this statement is untrue. The exhaust generated by the Bair Hugger creates convective airflow patterns which disrupt the laminar flow of the operating theatre.

150.    In a communication that appeared in Healthcare Purchasing News in July of 2012, the Defendants' public relations and communications specialist Greta Deutsch stated "some conductive-warming manufacturers have alleged that forced-air warming increases bacterial contamination of operating rooms or interrupts laminar airflow. These accusations have no factual basis." Again, this statement ignores numerous published studies documenting the adverse effects the Bair Hugger has on laminar airflow.

151.    The Defendants' representations misled healthcare providers about the safety of the Bair Hugger for use in surgical procedures. The Defendants' were aware of the falsity of their misrepresentations at the time those misrepresentations were authored.

152.    The publication of numerous peer-reviewed studies identifying and documenting the critical safety shortcomings of the Bair Hugger should have prompted the Defendants to

22

Electronically Filed - City of St. Louis - December 01, 2016 - 05:29 PM

redesign or discontinue their product. Instead, those criticisms only caused the Defendants to amplify their efforts to champion the Bair Hugger. These publications include, but are not limited to, the following:

a.  Albrecht M, et al. Forced-air warming blowers: An evaluation of filtration adequacy and airborne contamination emissions in the operating room. *Am J Infect Control* 2010; 39:321-8;

b.  Leaper D, et al. Forced-air warming: a source of airborne contamination in the operating room? *Orthopedic Rev.* 2009; 1(20):e28;

c.  McGovern, P.D., et al. Forced-air warming and ultra-clean ventilation do not mix. *J Bone and Joint Surg-Br.* 2011; 93-B(11): 1537-1544;

d.  Legg, A. et al. Do forced air patient-warming devices disrupt unidirectional downward airflow? *J Bone and Joint Surg-Br.* 2012; 94-B: 254-6;

e.  Belanie, K. et al. Patient warming excess heat: The effects on orthopedic operating room ventilation performance. *Anesthesia & Analgesia* 2012 (prepublication on-line) 2013; 117(2):406-411;

f.  Dasari, K.B., et al. Effect of forced air warming on the performance of operating theatre laminar flow ventilation. *Anaesthesia* 2012; 67:244-249.

153.   Rather than alter the design of their product or warn physicians of the dangers associated with the Bair Hugger, as numerous studies confirm, the Defendant has chosen to "double down" on their efforts to promote their defective product.

154.   Upon information and belief, Plaintiffs' physicians relied upon the above representations and advertisements to Plaintiffs' detriment. Through misrepresentations to the public, the medical community, and the FDA, the Defendant actively and knowingly concealed the propensity of these devices to cause infection in orthopedic implant surgeries.

155.   As a result of the failure of the Defendant's Bair Hugger to maintain the sterility of the surgical area and the Defendant's wrongful conduct in designing, manufacturing, and marketing this defective product, Plaintiffs and Plaintiffs' physician were unaware, and could not

Electronically Filed - City of St. Louis - December 01, 2016 - 05:29 PM

have reasonably known or have learned through reasonable diligence, that Plaintiff had been exposed to the risks identified in this complaint, and that those risks were the direct and proximate result of the Defendant's acts, omissions and misrepresentations.

**COUNT I – STRICT LIABILITY FOR FAILURE TO WARN OF
INHERENT DANGER IN THE PRODUCT**

156.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though set forth fully at length herein.  Plaintiffs plead this Count in the broadest sense possible, pursuant to all laws that may apply pursuant to choice of law principles, including the law of the Plaintiffs' resident State.

157.    The Defendants, or entities under their control, designed, manufactured, sold, distributed, marketed or supplied the Bair Hugger in a defective and unreasonably dangerous condition to consumers, including Plaintiffs.

158.    Defendants introduced into the stream of commerce the Bair Hugger, which is a defectively designed and/or manufactured product.

159.    Specifically, the Defendants failed to warn of the injuries suffered by Plaintiffs as a result of using the Bair Hugger including the increased risk of infection.

160.    The Defendants designed, manufactured, sold, distributed, supplied, marketed or promoted the Bair Hugger, which was expected to reach and did in fact reach consumers, including Plaintiffs, without substantial change in the condition in which it was manufactured and sold by the Defendants.

161.    Plaintiffs and Plaintiffs' physicians used the Bair Hugger in a reasonably anticipated manner normally intended, recommended, promoted and marketed by the Defendants.

24

Electronically Filed - City of St. Louis - December 01, 2016 - 05:29 PM

162.    The Bair Hugger failed to perform safely when used by ordinary consumers, including Plaintiffs, including when it was used as intended and in a reasonably anticipated manner.

163.    The Bair Hugger's design, including the disruption of operating room air flow and/or the propensity of the Bair Hugger's internal air flow causes passageways, including its non-HEPA compliant filter, to become contaminated with pathogens makes the Bair Hugger unreasonably dangerous when used in the way it is ordinarily used and is dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchased it, with the ordinary knowledge common to the medical community as to its characteristics.

164.    Because the Defendants researched, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold and otherwise released into the stream of commerce the Bair Hugger and in doing so, directly advertised or marketed the product to the FDA, health care professionals, and consumers, or persons responsible for consumers, they had a duty to warn of the risks associated with the use of the Bair Hugger.

165.    Defendants failed to adequately warn health care professionals and the public, including Plaintiffs and Plaintiffs' physicians, of the true risks of the Bair Hugger, including that the Bair Hugger would circulate contaminated air in the operating room and that the vented heat from Bair Hugger would mobilize floor air contaminated with pathogens into the surgical site, causing and/or contributing to cause infections, and requiring further treatment, including surgery or amputation.

166.    Defendants failed to provide timely and reasonable warnings regarding the safety and efficacy of the Bair Hugger.  Had they done so, proper warnings would have been heeded

Electronically Filed - City of St. Louis - December 01, 2016 - 05:29 PM

and no health care professional, including Plaintiffs' physicians, would have used Bair Hugger, and no patient, including Plaintiffs, would have allowed use of the Bair Hugger.

167.    The failure to provide timely and reasonable warnings, instructions, and information regarding the Bair Hugger to Plaintiffs or Plaintiffs' physicians rendered the Bair Hugger unreasonably dangerous.

168.    As a direct and proximate result of the Defendants' actions, omissions and misrepresentations, Plaintiffs suffered infections, requiring additional medical and surgical procedures to, among other things, to clean the infected area and/or remove the orthopedic implant.

169.    Plaintiffs have suffered damages and incurred and will continue to incur medical expenses as a result of using the Bair Hugger.  Plaintiffs have also suffered and will continue to suffer diminished capacity of the enjoyment of life, a diminished quality of life, increased risk of premature death, aggravation of preexisting conditions and activation of latent conditions, and other losses and damages.  Plaintiffs' direct medical losses and costs include care for hospitalizations, physician care, monitoring, treatment, medications and supplies.  Plaintiffs have incurred and will continue to incur mental and physical pain and suffering and loss of wages and wage earning capacity.

170.    The Defendants' conduct described above was committed with knowing, conscious, wanton, willful, and deliberate disregard for the value of human life and the rights and safety of consumers such as Plaintiffs.  Defendants' conduct warrants, if allowed by the Court upon motion, an award of punitive damages against Defendant in an amount appropriate to punish the Defendants and deter them from similar conduct in the future.

Electronically Filed - City of St. Louis - December 01, 2016 - 05:29 PM

## COUNT II – STRICT LIABILITY FOR
## DEFECTIVE MANUFACTURE AND DESIGN

171.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though set forth fully at length herein.  Plaintiffs plead this Count in the broadest sense possible, pursuant to all laws that may apply pursuant to choice of law principles, including the law of the Plaintiffs' resident State.

172.    The Defendants, or entities under their control, designed, manufactured, sold, distributed, marketed or supplied the Bair Hugger in a defective and unreasonably dangerous condition to consumers, including Plaintiffs.

173.    Defendants introduced into the stream of commerce a defectively designed and/or manufactured product.

174.    The Defendants designed, manufactured, sold, distributed, supplied, marketed or promoted the Bair Hugger, which was expected to reach and did in fact reach consumers, including Plaintiffs, without substantial change in the condition in which it was manufactured and sold by the Defendant.

175.    Plaintiffs and Plaintiffs' physicians used the Bair Hugger in a reasonably anticipated manner normally intended, recommended, promoted and marketed by the Defendants.

176.    The Bair Hugger failed to perform safely when used by ordinary consumers, including Plaintiffs, including when it was used as intended and in a reasonably anticipated manner.

177.    Bair Hugger is defective because it causes, contributes to cause and/or increases the risk of infection.  This includes the disruption operating room air flow, and/or the propensity of the Bair Hugger's internal air flow passageways, including its non-HEPA compliant filter, to

27

Electronically Filed - City of St. Louis - December 01, 2016 - 05:29 PM

become contaminated with pathogens makes the Bair Hugger unreasonably dangerous when used in the way it is ordinarily used and is dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchased it, with the ordinary knowledge common to the community as to its characteristics.

178.    The design of the Bair Hugger or its component parts makes the Bair Hugger unreasonably dangerous, taking into consideration the utility of the device and the risk involves in its use.

179.    At all times relevant to this action, an economically and technologically feasible safer alternative design existed, which in reasonable medical probability:

a.      would have prevented or significantly reduced the risk of Plaintiffs' infections and subsequent injuries (including additional surgical procedures to clean the infected area and/or remove the implant); and

b.      would not have impaired the utility of the device.

180.    Specifically, the Bair Hugger is defective in its design in that it is not reasonably fit, suitable or safe for its intended purpose or its foreseeable risks exceed the benefits associated with its design.

181.    The defective condition of the Bair Hugger rendered it unreasonably dangerous or not reasonably safe and the Bair Hugger was in this defective condition at the time it left the hands of the Defendants.  The Bair Hugger was expected to and did reach Plaintiffs and Plaintiffs' physicians without substantial change in the condition in which it was designed, manufactured, labeled, sold, distributed, marketed, promoted, supplied, and otherwise released into the stream of commerce.

182.    Defendants knew or should have known of the danger associated with the use of the Bair Hugger, as well as the defective nature of the Bair Hugger, but have continued to design,

Electronically Filed - City of St. Louis - December 01, 2016 - 05:29 PM

manufacture, sell, distribute, market, promote, or supply the Bair Hugger so as to maximize sales and profits at the expense of the public health and safety, in conscious disregard of the foreseeable harm caused by Bair Hugger. For example, Defendant's website http://www.fawfacts.com/_asset/qgx6tq/Spread-Good-Science-Statement.pdf (last visited September 26, 2016) states: "In its entire history of warming more than 200 million patients, not one hospital, doctor or medical provider has reported a single confirmed incidence of infection caused by 3M™ Bair Hugger™ therapy."

183.    As a direct and proximate result of the Defendants' actions, omissions and/or misrepresentations, Plaintiffs suffered infections, requiring among other things, additional surgical procedures to clean the infected area and/or remove the orthopedic implant.

184.    Plaintiffs have suffered damages and incurred and will continue to incur medical expenses as a result of using the Bair Hugger. Plaintiffs have also suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, increased risk of premature death, aggravation of preexisting conditions and activation of latent conditions, and other losses and damages. Plaintiffs' direct medical losses and costs include care for hospitalization, physician care, monitoring, treatment, medications and supplies. Plaintiffs have incurred and will continue to incur mental and physical pain and suffering and loss of wage earning capacity.

185.    The Defendants' conduct as described above was committed with knowing, conscious, wanton, willful, and deliberate disregard for the value of human life and the rights and safety of consumers such as the Plaintiffs. Defendants' conduct warrants, if allowed by the Court upon motion, an award of punitive damages against Defendants in an amount appropriate to punish the Defendants and deter them from similar conduct in the future.

Electronically Filed - City of St. Louis - December 01, 2016 - 05:29 PM

## COUNT III – NEGLIGENCE

186.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though set forth fully at length herein.  Plaintiffs plead this Count in the broadest sense possible, pursuant to all laws that may apply pursuant to choice of law principles, including the law of the Plaintiffs' resident State.

187.    The Defendants owed Plaintiffs a duty to exercise reasonable care when designing, manufacturing, marketing, advertising, distributing, and selling the Bair Hugger.

188.    The Defendants failed to exercise due care under the circumstances and therefore breached this duty by:

a.    Failing to properly and thoroughly design and /or test the Bair Hugger before releasing the device to market;

b.    Failing to properly and thoroughly analyze the data resulting from the pre-market tests of the Bair Hugger;

c.    Failing to conduct sufficient post-market testing and surveillance of the Bair Hugger;

d.    Designing, manufacturing, marketing, designing, advertising, distributing, and selling the Bair Hugger to consumers, including Plaintiffs, without an adequate warning of the significant and dangerous risks of the Bair Hugger and without proper instructions to avoid the harm which could foreseeably occur as a result of using the device;

e.    Failing to exercise due care when designing, advertising and promoting the Bair Hugger;

f.    Negligently continuing to design, manufacture, market, advertise, and distribute the Bair Hugger after Defendant knew or should have known of its adverse effects; and

g.    Negligently designing the product such that it caused and/or contributed to cause the injuries plead herein including infections and increased risk of infections.

189.    As a direct and proximate result of the Defendants' actions, omissions and misrepresentations, Plaintiffs suffered infections, requiring additional medical treatment.

Electronically Filed - City of St. Louis - December 01, 2016 - 05:29 PM

190.    Plaintiffs have suffered damages and incurred and will continue to incur medical expenses as a result of using the Bair Hugger.  Plaintiffs have also suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, increased risk of premature death, aggravation of preexisting condition and activation of latent conditions, and other losses and damages.  Plaintiffs' direct medical losses and costs include care for hospitalization, physician care, monitoring, treatment, medications and supplies.  Plaintiffs have incurred and will continue to incur mental and physical pain and suffering and wage earning capacity.

191.    The Defendants' conduct as described above was committed with knowing, conscious, wanton, willful and deliberate disregard for the value of human life and the rights and safety of consumers such as Plaintiff.  Defendants' conduct warrants, if allowed by the Court upon motion, an award of punitive damages against Defendants in an amount appropriate to punish the Defendants and deter them from similar conduct in the future.

## COUNT IV – NEGLIGENT MISREPRESENTATION

192.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though set forth fully at length herein.  Plaintiffs plead this Count in the broadest sense possible, pursuant to all laws that may apply pursuant to choice of law principles, including the law of the Plaintiffs' resident State.

193.    The Defendants made negligent misrepresentations with respect to the Bair Hugger including, but not limited to, the following particulars:

a.    The Defendants represented through the labeling, advertising, marketing materials, seminar presentations, publications, notice letters, and regulatory submissions that Bair Hugger has been tested and found to be safe and effective for the warming of patients during orthopedic implant surgery; and

31

Electronically Filed - City of St. Louis - December 01, 2016 - 05:29 PM

b.    The Defendants represented the Bair Hugger was safer than other patient warming systems.

194.    Defendants did not exercise reasonable care or competence in obtain or communicating the information to the public regarding the characteristics and qualities of the Bair Hugger.

195.    Plaintiffs and Plaintiffs' physicians did, in fact, justifiably and reasonably rely upon the representations.

196.    As a direct and proximate result of the Defendants' actions, omissions and misrepresentations, Plaintiffs suffered infections, requiring, among other things, additional surgical procedures to clean the infected area and/or remove the orthopedic implant.

197.    Plaintiffs have suffered damages and incurred and will continue to incur medical expenses as a result of using the Bair Hugger.  Plaintiffs have also suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, increased risk of premature death, aggravation of preexisting conditions and activation of latent conditions, and other losses and damages.  Plaintiffs' direct medical losses and costs include care for hospitalization, physician care, monitoring, treatment, medications and supplies.  Plaintiffs have incurred and will continue to incur mental and physical pain and suffering and loss of wage earning capacity.

198.    Upon information and belief, the Defendants' conduct as described above was committed with knowing, conscious, wanton, willful and deliberate disregard for the value of human life and the rights and safety of consumers such as Plaintiffs.  Defendants' conduct warrants, if allowed by the Court upon motion, an award of punitive damages against Defendant in an amount appropriate to punish the Defendant and deter them from similar conduct in the future.

Electronically Filed - City of St. Louis - December 01, 2016 - 05:29 PM

## COUNT V – BREACH OF EXPRESS WARRANTY

199.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though set forth fully at length herein.  Plaintiffs plead this Count in the broadest sense possible, pursuant to all laws that may apply pursuant to choice of law principles, including the law of the Plaintiffs' resident State.

200.    At all relevant times, Defendants knew or should have known that the Bair Hugger was unreasonably dangerous and defective when put to their reasonably anticipated use.

201.    The Defendants designed, manufactured, sold, distributed, supplied, marketed or promoted the Bair Hugger, which was expected to reach and did in fact reach consumers, including Plaintiffs, without substantial change in the condition in which it was manufactured and sold by the Defendant.

202.    The Defendants made statements about the kind or quality of the Bair Hugger including, but not limited to, the following particulars:

a.    The Defendant represented through the labeling, advertising, marketing materials, seminar presentations, publications, notice letters, and regulatory submissions that the Bair Hugger has been tested and found to be safe and effective for the warming of patients during orthopedic implant surgery; and

b.    The Defendant represented Bair Hugger was safer than other patient warming systems.

The representations were made by Defendants with the intent that doctors and patients, including Plaintiffs, rely upon them.  For example, in a section of Defendant's website www.fawfacts.com (last visited September 26, 2016) that advertises directly to orthopedic surgeons the website states: "When tested in actual surgical conditions, research shows that forced-air warming does not increase the bacterial count at the surgical site. Tests also have demonstrated that airflow from the Bair Hugger system has no significant effect on operating

33

Electronically Filed - City of St. Louis - December 01, 2016 - 05:29 PM

room airflow. Additional research has shown there is no disruption of laminar airflow tied to the use of forced-air warmers."

203.    Plaintiffs and Plaintiffs' physicians did in fact rely upon the representations.  In the absence of the Defendants' representations, the Bair Hugger would not be used in implantation surgeries such as those at issue in this case.

204.    The Defendants breached their express warranty to consumers, including Plaintiffs; the Bair Hugger was not of merchantable quality or safe and fit for its intended use.

205.    Plaintiffs and Plaintiffs' physicians, by the use of reasonable care, would not have discovered the breached warranty and realized its danger.

206.    Defendants were notified that the Bair Hugger was not of merchantable quality or safe and fit for its intended use through publication of numerous peer-reviewed studies identifying and documenting the critical safety shortcomings of the Bair Hugger.  The first study that suggested an association between the Bair Hugger and air-borne contaminations in the operating room was published in 2009, and studies confirming this association have been and continue to be conducted.

207.    As a direct and proximate result of the Defendants' actions and express representations, Plaintiffs suffered infections, requiring additional surgical procedures to clean the infected area and/or remove the orthopedic implant.

208.    Plaintiffs have suffered damages and incurred and will continue to incur medical expenses as a result of using the Bair Hugger.  Plaintiffs have also suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, increased risk of premature death, aggravation of preexisting conditions and activation of latent conditions, and other losses and damages.  Plaintiffs' direct medical losses and costs include care for

Electronically Filed - City of St. Louis - December 01, 2016 - 05:29 PM

hospitalization, physician care, monitoring, treatment, medications and supplies. Plaintiffs have incurred and will continue to incur mental and physical pain and suffering and loss of wage earning capacity.

209.    Upon information and belief, the Defendants' conduct as described above was committed with knowing, conscious, wanton, willful and deliberate disregard for the value of human life and the rights and safety of consumers such as Plaintiffs. Defendants' conduct warrants, if allowed by the Court upon motion, an award of punitive damages against Defendants in an amount appropriate to punish the Defendants and deter them from similar conduct in the future.

## COUNT VI – BREACH OF IMPLIED WARRANTY

210.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though set forth fully at length herein. Plaintiffs plead this Count in the broadest sense possible, pursuant to all laws that may apply pursuant to choice of law principles, including the law of the Plaintiffs' resident State.

211.    The Defendants designed, manufactured, distributed, advertised, promoted and sold the Bair Hugger for use in sterile, surgical environments.

212.    At all relevant times, the Defendants knew of the use for which the Bair Hugger was intended and impliedly warranted the product to be of merchantable quality and safe and fit for such use.

213.    The Defendants were aware that consumers, including Plaintiffs, would use the Bair Hugger for treatment in conjunction with orthopedic surgical procedures.

Electronically Filed - City of St. Louis - December 01, 2016 - 05:29 PM

214.    Plaintiffs, Plaintiffs' physicians, and the medical community reasonably relied upon the judgment and sensibility of the Defendants to sell the Bair Hugger only if it was indeed of merchantable quality and safe and fit for its intended use.

215.    The Defendants breached their implied warranty to consumers, including Plaintiffs, because the Bair Hugger was not of merchantable quality or safe and fit for its intended use.

216.    Consumers, including Plaintiffs, Plaintiffs' physician, and the medical community reasonably relied upon the Defendants' implied warranty for the Bair Hugger.

217.    Plaintiffs and Plaintiffs' physicians, by the use of reasonable care, would not have discovered the breached warranty and realized its danger.

218.    Defendants were notified that the Bair Hugger was not of merchantable quality or safe and fit for its intended use through publication of numerous peer-reviewed studies identifying and documenting the critical safety shortcomings of the Bair Hugger. The first study that suggested an association between the Bair Hugger and air-borne contaminations in the operating room was published in 2009, and studies confirming this association have been and continue to be conducted.

219.    As a direct and proximate result of the Defendants' actions, omissions and misrepresentations, Plaintiffs suffered infections, requiring additional surgical procedures to clean the infected area and/or remove the orthopedic implants.

220.    Plaintiffs suffered damages and incurred and will continue to incur medical expenses as a result of using the Bair Hugger. Plaintiffs have also suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, increased risk of premature death, aggravation of preexisting conditions and activation of latent conditions, and

Electronically Filed - City of St. Louis - December 01, 2016 - 05:29 PM

other losses and damages. Plaintiffs' direct medical losses and costs include care for hospitalization, physician care, monitoring, treatment, medications and supplies. Plaintiffs have incurred and will continue to incur mental and physical pain and suffering and loss of wage earning capacity.

221.    The Defendants' conduct as described above was committed with knowing, conscious, wanton, willful and deliberate disregard for the value of human life and the rights and safety of consumers such as Plaintiffs. Defendants' conduct warrants, if allowed by the Court upon motion, an award of punitive damages against Defendants in an amount appropriate to punish the Defendants and deter them from similar conduct in the future.

### COUNT VII – FRAUDULENT MISREPRESENTATION

222.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though set forth fully at length herein. Plaintiffs plead this Count in the broadest sense possible, pursuant to all laws that may apply pursuant to choice of law principles, including the law of the Plaintiffs' resident State.

223.    The Defendants made fraudulent misrepresentations with respect to the Bair Hugger including, but not limited to, the following particulars:

   a.    The Defendants represented through the labeling, advertising, marketing materials, seminar presentations, publications, notice letters, and regulatory submissions that the Bair Hugger has been tested and found to be safe and effective for the warming of patients during orthopedic implant surgery; and

   b.    The Defendants represented Bair Hugger was safer than other patient warming systems.

224.    Defendants knew that their representations were false, yet they willfully, wanton, and recklessly disregarded their obligation to provide truthful representations regarding the safety and risk of Bair Hugger to consumers, including Plaintiffs, and the medical community.

Electronically Filed - City of St. Louis - December 01, 2016 - 05:29 PM

225.   The representations were made by Defendants with the intent that doctors and patients, including Plaintiffs, rely upon them.  For example, in a section of Defendants' website www.fawfacts.com (last visited September 26, 2016) that advertises directly to orthopedic surgeons the website states: "When tested in actual surgical conditions, research shows that forced-air warming does not increase the bacterial count at the surgical site. Tests also have demonstrated that airflow from the Bair Hugger system has no significant effect on operating room airflow. Additional research has shown there is no disruption of laminar airflow tied to the use of forced-air warmers."

226.   The Defendants' representations were made with the intent of defrauding and deceiving Plaintiffs, other consumers, and the medical community to induce and encourage the sale of Bair Hugger.  For example, Defendants' website http://www.fawfacts.com/_asset/qgx6tq/Spread-Good-Science-Statement.pdf (last visited September 26, 2016) states:  "In its entire history of warming more than 200 million patients, not one hospital, doctor or medical provider has reported a single confirmed incidence of infection caused by 3M™ Bair Hugger™ therapy."

227.   Plaintiffs and Plaintiffs' physicians did in fact rely upon the representations.  In the absence of the Defendants' representations, the Bair Hugger would not be used in implantation surgeries such as those at issue in this case.

228.   The Defendant's fraudulent representations evidence their callous, reckless, and willful indifference to the health, safety, and welfare of consumers, including Plaintiffs.

229.   As a direct and proximate result of the Defendants' actions, omissions and misrepresentations, Plaintiffs suffered infections, requiring additional surgical procedures to clean the area and/or remove the orthopedic implant.

Electronically Filed - City of St. Louis - December 01, 2016 - 05:29 PM

230.    Plaintiffs have suffered damages and incurred and will continue to incur medical expenses as a result of using the Bair Hugger. Plaintiffs have also suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, increased risk of premature death, aggravation of preexisting conditions and activation of latent conditions, and other losses and damages. Plaintiffs' direct medical losses and costs include care for hospitalization, physician care, monitoring, treatment, medications and supplies. Plaintiffs have incurred and will continue to incur mental and physical pain and suffering and loss of wage earning capacity.

231.    Upon information and belief, the Defendants' conduct as described above was committed with knowing, conscious, wanton, willful and deliberate disregard for the value of human life and the rights and safety of consumers such as Plaintiffs. Defendants' conduct warrants, if allowed by the Court upon motion, an award of punitive damages against Defendants in an amount appropriate to punish the Defendant and deter them from similar conduct in the future.

## DEMAND FOR TRIAL BY JURY

Plaintiffs hereby demand a trial by jury of all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs demand judgment against the Defendants on each of the above-referenced claims and Causes of Action and as follows:

1.    Awarding compensatory damages in excess of $25,000, including but not limited to pain, suffering, emotional distress, loss of enjoyment, and other non-economic damages in an amount to be determined at trial of this action;

Electronically Filed - City of St. Louis - December 01, 2016 - 05:29 PM

2.    Awarding economic damages in the form of medical expenses, out of pocket expenses, lost earnings and other economic damages in an amount to be determined at trial of this action;

3.    Punitive and/or exemplary damages for the wanton, willful, fraudulent, reckless acts of the Defendants who demonstrated a complete disregard and reckless indifference for the safety and welfare of the general public and to the public and to the Plaintiff in an amount sufficient to punish Defendant and deter future similar conduct;

4.    Prejudgment interest;

5.    Post-judgment interest;

6.    Awarding Plaintiffs reasonable attorneys' fees when applicable;

7.    Awarding Plaintiffs the costs of these proceedings; and

8.    Such other and further relief as this Court deems just and proper.


Dated: December 1, 2016                    Respectfully submitted,

                                           **THE SIMON LAW FIRM, P.C.**

                                           /s/ Anthony G. Simon
                                           Anthony G. Simon, # 38745MO
                                           800 Market Street, Suite 1700
                                           St. Louis, Missouri 63101
                                           P. 314.241.2929
                                           F. 314.241.2029
                                           asimon@simonlawpc.com


## <u>CERTIFICATE OF SERVICE</u>

I certify that a true copy of the foregoing was served electronically upon all counsel of record via the CM/ECF system on this 1st day of December, 2016.

                                           /s/ Anthony Simon